# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DENNIS STANFORD,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**KILOLO KIJAKAZI,**[1] )<br>**Acting Commissioner of the Social** )<br>**Security Administration,** )<br>)<br>**Defendant.** ) | Case No. CIV-21-63-SPS |

## OPINION AND ORDER

The claimant Dennis Stanford requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of hisr past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).  *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty-three years old at the time of the administrative hearing (Tr. 35).  He completed high school and one year of college and has worked as a truck driver, equipment operator, and security/gate guard (Tr. 68, 219).  The claimant alleges that he has been unable to work since January 23, 2017, due to an on-the-job injury, whole back pain, whole body nerve pain, whole body aches, high blood pressure, and decreased vision (Tr. 248).

## Procedural History

On February 7, 2019, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85.  His applications were denied.  ALJ Michael Mannes held an administrative hearing and determined in a written opinion dated September 15, 2020 that the claimant was not disabled prior to December 17, 2019, but that he became disabled on December 17, 2019 (Tr. 13-25).  The Appeals Council denied review, so the ALJ's opinion represents the Commissioner's final decision for purposes of this appeal.  *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

As to his finding that the claimant was not disabled prior to December 17, 2019, the ALJ made his decision at step four of the sequential evaluation. He found at step four that the claimant had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) & 416.967(b), except that he could only frequently balance, reach overhead bilaterally, and handle and finger bilaterally; only occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl; and never climb ladders/ropes/scaffolds. Additionally, he found that the claimant must avoid frequent exposure to unprotected heights, unprotected moving mechanical parts, and dangerous machinery (Tr. 16). The ALJ then concluded that the claimant could return to his past relevant work as a security gate guard (Tr. 23-24).

## Review

The claimant contends that the ALJ erred by failing to properly evaluate his mental impairments at step three, which further affected the RFC at step four. The Court finds these contentions unpersuasive for the following reasons.

The ALJ found at step two that the claimant had the severe impairments of dysfunction of major joints, spine disorder, and vascular insult of the brain, as well as the nonsevere impairments of depression, bipolar disorder, essential hypertension, substance addiction disorder, and obesity (Tr. 15-16). The medical evidence in the record largely pertains to the claimant's physical impairments, namely an on-the-job injury that occurred in January 2017 that included a back injury, and a stroke that occurred in December 2019. On January 23, 2017, the claimant was hit by a truck and thrown in the air (Tr. 355). Thereafter, the claimant underwent a cervical diskectomy and anterior cervical fusion of

4

C3-4 in April 2017 (Tr. 342-343). Then, the claimant presented to McAlester Regional Health Center with stroke symptoms on December 17, 2019, was airlifted to Hillcrest Medical Center for a CT perfusion scan, and was then hospitalized at Oklahoma Stroke & Neurological Institute until December 23, 2019 (Tr. 588-589, 763-773).

The evidence as to the claimant's mental impairments was sparse. Treatment notes from Dr. Gerald Rana, D.O., from January 2017 through the time of the ALJ's decision reflect the claimant was negative for anxiety, depression, sadness, sleep disturbance, and suicidal thoughts (Tr. 446-494, 614-620, 972-992). A March 2017 treatment note from Central States Orthopedic, William Office, indicated that the claimant had no depression or anxiety (Tr. 558). And treatment notes from Stigler Health and Wellness in 2019 state specifically that the claimant had no significant symptoms of depression, no anxiety, and no depression (Tr. 539-548, 641-675). However, a January 2018 treatment note from Neuroscience Specialists, P.C., indicates the claimant reported depression and difficulty sleeping, as well as difficulty with memory, thinking, and problem solving (Tr. 424-425, 441).

On August 26, 2019, Dr. Kathleen Ward, Ph.D., conducted a mental status examination of the claimant (Tr. 552-555). In the diagnostic impression, Dr. Ward indicated that the claimant denied marijuana use that day, but that he reported using it daily and that he had presented with glassy eyes and a flushed face (which he attributed to being hot natured) (Tr. 554). She noted the claimant had a fairly suspicious and bitter worldview, and that he may benefit from mental healthcare to assist in reducing symptoms of irritable depression that may be associated with chronic pain (Tr. 554). She assessed him with an

5

unspecified mood disorder, cannabis use, and unspecified neurocognitive disorder v. substance/prescription intoxication (Tr. 554). On September 4, 2019, state reviewing physician Joan Holloway, Ph.D., determined that the claimant's mental impairments were nonsevere (Tr. 132-134).

In his written opinion, the ALJ set forth the claimant's severe and nonsevere impairments at step two but did not rate the degree of functional limitations in the four broad functional areas with regard to the claimant's mental impairments, as required by 20 C.F.R. § 404.1520a (Tr. 15-16). At step four of the opinion, applying to January 23, 2017 through December 16, 2019, the ALJ summarized the claimant's hearing testimony, as well as the medical evidence in the record. As to his mental impairments, the ALJ summarized Dr. Ward's report and noted that a state reviewing physician had found his mental impairments to be nonsevere, as well as the fact that there was limited mental health treatment and that he even had an unspecified diagnosis (Tr. 20-21). He further found persuasive Dr. Ward's opinion that he would possibly benefit from mental health treatment (Tr. 21).

The procedure for evaluating mental impairments is set out in 20 C.F.R. § 404.1520a. Once an ALJ has identified a medically determinable mental impairment, the ALJ must rate the degree of functional limitation(s) in four broad functional areas ("[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself") using a five-point scale ranging from none to extreme. 20 C.F.R. § 404.1520a(c)(3)-(4). These four broad functional areas are referred to as the "Paragraph B criteria" because Paragraph B of almost every listing related

to mental impairments provides the functional criteria for evaluating how a mental disorder limits a claimant's functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(A)(2)(b). "To satisfy the Paragraph B criteria [in order to meet a Listing at step three], your mental disorder must result in "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Conversely, if all four areas are rated as "none" or "mild," an impairment is generally considered nonsevere. 20 C.F.R. § 404.1520a(d)(1). Regardless of the rating, however, the regulations direct that "[t]he decision *must* include a specific findings as to the degree of limitation in each of the functional areas[.]" 20 C.F.R. § 404.1520a (e)(4) (emphasis added).

The ALJ clearly erred in failing to make the required specific findings here. The claimant contends this is reversible error in violation of the regulations, while the Commissioner contends the error is harmless. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005) ("[A]n ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment."). The Tenth Circuit has held that when "no reasonable factfinder" could assign *marked* restrictions (or extreme limitations), the failure to rate the four broad functional areas is harmless. *See Stokes v. Astrue*, 274 Fed. Appx. 675, 682 (10th Cir. 2008) ("[W]e conclude no reasonable factfinder could have found Ms. Stokes had *marked* restrictions of her ADLs and, therefore, that the ALJ's failure to properly utilize the "special technique" at step three was harmless error."). Here, the evidence related to mental impairments as to the claimant is minimal, if it exists, and the

7

ALJ discussed both Dr. Ward's report and the opinion of the state reviewing physician. It is also noteworthy that the claimant did not list any mental impairments in his disability application, nor was he prescribed related medications. *Armijo v. Astrue*, 385 Fed. Appx. 789, 792 (10th Cir. 2010) ("Indeed, it was not until after the ALJ's adverse decision that Mr. Armijo took the position that his depression was a factor in the disability calculus."). At most, Dr. Ward indicated the claimant had an unspecified mood disorder, while all other treating providers found no significant symptoms of anxiety or depression at all. *Id.* ("Given the state of the record before the ALJ, it is commendable that the ALJ even took note of Mr. Armijo's depression. Mr. Armijo did not advance depression as a basis for his disability claim; he wholly omitted it from his application and other filings except for one reference in his request for an ALJ hearing, where he listed an antidepressant among his medications."). The Court thus finds here, as in *Armijo*, that no reasonable factfinder could have reached a finding that the claimant's mental impairment(s) had more than a minimal effect on his ability to perform work. *Id.*, 385 Fed. Appx. at 792-793 ("Because there was nothing in the record before the ALJ to suggest that Mr. Armijo's depression caused functional limitations in any of the four broad functional areas, we can say with confidence that no reasonable administrative factfinder, applying the special technique of § 404.1520a, could have reached any finding other than that Mr. Armijo's depression had only minimal effect on his ability to perform basic work activities.").

The claimant contends, however, that this error was compounded at step four because failing to apply this "special technique" means *ipso facto* that the ALJ could not have properly assessed his RFC. Because the ALJ did find the claimant had other severe

8

impairments, he was obligated to then consider *all* of the claimant's impairments (severe or otherwise) in subsequent stages of the sequential evaluation, including the step four assessment of the claimant's RFC. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. . . . [T]he ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [citations omitted]. An RFC has been defined as "what an individual can still do despite his or her limitations." Soc. Sec. R. 98-6p, 1996 WL 374184, at *2 (July 2, 1996). It is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id.* This includes a discussion of the "nature and extent of" a claimant's physical limitations including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching)." 20 C.F.R. §§ 404.1545(b), 416.945(b). Further, this assessment requires the ALJ to make findings on "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,]" and to "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." Soc. Sec. R. 98-6p, 1996 WL 374184, at *1, 7.

Here, the evidence in the record does not reflect further limitations, and the ALJ clearly considered *all* the evidence in the record. *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). It is clear from the entirety of the written decision that the ALJ properly found that the claimant's mental impairments here were not disabling, despite his earlier, ultimately harmless, error in the decision. *See Thompson v. Colvin*, 551 Fed. Appx. 944, 946–47 (10th Cir. 2014) ("The ALJ's decision does not document the required technique. Nevertheless, the error was harmless because the ALJ's findings later in his analysis established that Thompson's mental impairments were not disabling.") (*citing Fischer–Ross,* 431 F.3d at 733-735). Accordingly, the decision of the Commissioner is hereby affirmed.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 1st day of August, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**